IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Kevin W. English, | : | |
| Plaintiff | : | Civil Action 2:10-cv-489 |
| v. | : | Judge Sargus |
| Commissioner of Social Security, | : | Magistrate Judge Abel |
| Defendant | : | |

**OPINION AND ORDER**

Plaintiff Kevin W. English filed this action on June 1, 2010, seeking review of a final decision of the Commissioner of Social Security denying his application for Social Security Disability and Supplemental Security Income benefits. On April 20, 2011, the Magistrate Judge issued a Report and Recommendation recommending that the decision of the Commissioner be upheld and that Plaintiff's objections be overruled. This matter is now before the Court pursuant to Plaintiff's objections to the Report and Recommendation.

Plaintiff English filed his application for disability insurance benefits and supplemental security income in November 2004, alleging that he became disabled the month before, at age 38, by a bad back, depression, and anxiety attacks. The administrative law judge found that English retains the ability to perform a reduced range of work having medium demands.

I. **ALJ's Decision and Review**.

The administrative law judge ("ALJ") found that Plaintiff had the severe impairments of a history of lumbar and cervical spine sprain/strain, possible borderline intellectual functioning, and possible mood disorder. He found, however, that Plaintiff retained the ability to perform a reduced range of medium work, limiting him, *inter alia*, to simple tasks not involving detailed instructions, with low stress, no dealing with the public, no fast-paced work, no production quotas, and no more than minimal contact with supervisors and coworkers.

In this action, Plaintiff argued that he is disabled *per se* under Listing 12.05(C), that the ALJ failed to follow the treating physician rule in rejecting the opinion of psychiatrist Dr. D'Imperio, that the ALJ failed to give substantial weight to the functional capacity opinion of psychological assistant Mr. Wallisch, that the ALJ improperly gave weight to one government medical examiner over the other, that the ALJ failed to properly evaluate his credibility, and that the ALJ relied upon flawed vocational expert testimony.

The Magistrate Judge, in his Report and Recommendation, found that there was substantial evidence in the record to support the ALJ's finding that Plaintiff did not suffer deficits in adaptive functioning sufficient to render him disabled under Listing 12.05(C), that the ALJ identified good reasons in rejecting D'Imperio's mental functional capacity findings, that the ALJ correctly found that Mr. Wallisch's opinion should not be given weight, that the ALJ did not err in adopting the findings of one government medical examiner, Dr. Glaser, over

another, Dr. Ray, and that the ALJ's determination of Plaintiff's credibility was supported by substantial evidence in the record. The Magistrate Judge also found that, as the ALJ had not erred in failing to properly follow the treating physician rule, his hypothetical questions to the vocational expert were likewise not flawed.[1] (Doc. 20 at 18-33.) Plaintiff has now brought objections to the Report and Recommendation, and the Court will address his contentions individually.

II. **Standard of Review**.

Under the provisions of 42 U.S.C. §405(g), "[t]he find-ings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It means "'more than a scintilla.'" *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "take into account whatever in

---

[1] Plaintiff also raised an argument on appeal that the ALJ had inappropriately relied upon a certain non-examining source whom he stated had based her opinions on the ALJ's prior findings in an earlier disability application by Plaintiff. The Magistrate Judge found that the ALJ did not err in this respect, and Plaintiff has not referred to this argument in his objections. It consequently will not be addressed in this analysis.

the record fairly detracts from its weight." *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

III. **Listing 12.05(C)**

This listing mandates:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. [...]
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. §404, Subpt. P, App. 1, §12.05. As the Magistrate Judge noted, this listing has three elements: (1) the claimant experiences significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period (*i.e.*, before the age of twenty-two); (2) the claimant has a verbal, performance, or full scale IQ of 60 through 70; and (3) the claimant suffers from a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Turner v. Comm'r of Soc. Sec.*, 381 Fed.Appx. 488, 491 (6th Cir. 2010), citing *West v. Comm'r of Soc. Sec. Admin.*, 240 Fed.Appx. 692, 697-98 (6th Cir. 2007). In his opinion, the ALJ found:

> The record shows some IQ scores in the sixties at times but at other testing times there were no scores of 70 or below. There has been no medical diagnosis of mild mental retardation. Borderline intellectual functioning but with further indication that the claimant's adaptive functioning is well beyond the limitations that would be suggested by such low IQ scores (this evidence is discussed below). Accordingly, section 12.05 is not applicable in this case.

(R. 20.) The ALJ reviewed various evidence, including the conclusions of state disability psychological examiner Dr. James J. Rosenthal, who examined Plaintiff, estimated that he was of borderline range intelligence, and concluded that he was nevertheless not significantly impaired in his ability to work, the review of Dr. Roy Shapiro, state disability reviewing physician, who assessed Dr. Rosenthal's record and concluded that Plaintiff's adaptive data of record was not consistent with borderline IQ and that he did not have a severe mental impairment, and the examination of psychological assistant Mr. Eckart Wallisch, who opined that Plaintiff's adaptive skills were probably better developed than his overall mental age would suggest. He found:

> This evidence only shows that the claimant may have borderline intellectual functioning (he is not so fully credible in this record that this can be determined to a definitive finding). Mr. Wallisch's last commentary that his adaptive functioning appeared to be better developed than his testing ability corroborates the BDD's opinion.

(R. 20, 25.)

In his Report and Recommendation, the Magistrate Judge found that Plaintiff had demonstrated that he met the second and third elements. However, he found that the evidence of record could lead a reasonable person to conclude that, regardless of his tested low IQ scores, Plaintiff does not experience significant

deficits in adaptive functioning that initially manifested themselves during the developmental period. The Magistrate Judge therefore concluded that the ALJ did not err in finding that Plaintiff does not meet Listing 12.05(C).

On objection, Plaintiff argues that "the Magistrate Judge fails to appreciate what is required to show that a claimant has subaverage general intellectual functioning with deficits of adaptive functioning prior to age 22."[2] (Doc. 21 at 3.) Plaintiff notes that he had IQ scores that placed him in the listed range prior to age 22, and that evidence existed in the record such as his special education classes, repeat of the eighth grade, and attendance in a developmental handicap program, to demonstrate that he had deficits during this period. Plaintiff concludes:

> Remarkably, none of the evidence cited by the Magistrate Judge is from the developmental period (i.e. prior to age 22). In addition, there is no evidence any of these medical sources were asked to consider the developmental period. Indeed, none of the evidence cited by the Magistrate Judge makes any reference to the developmental period or evidence in the record from that period that could show Mr. English had no deficits in adaptive functioning during that period. This is probably why the ALJ chose not [to] rely upon any of this evidence in making his step three determination.

(Doc. 21 at 4.)

A finding of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental

---

[2] Plaintiff also asserts that the Magistrate Judge improperly cited evidence to support the ALJ's decision that the ALJ did not himself cite. (Doc. 21 at 3.) This objection is unfounded; the Magistrate Judge cited to the evidence of Rosenthal, Chambly, Wallisch, and Shapiro, as did the ALJ. *See* R. 22-23 (Rosenthal); R. 24 (Chambly); R. 24-25 (Wallisch); R. 23 ("the BDD reviewer", *i.e.*, Shapiro).

period" is necessarily dependent upon two requirements: first, that the claimant has such deficits, and second, that such deficits, if they exist, initially manifested themselves during the developmental period. The requirements are not met if the claimant does not now have such deficits, and they are not met if such deficits initially manifested themselves more recently than the developmental period. Plaintiff criticizes the ALJ's opinion, and the Report and Recommendation of the Magistrate Judge, for not exploring the question of whether Plaintiff had adaptive deficits during his developmental period. However, this objection misses the mark. The ALJ found that the evidence of record, although it demonstrated that Plaintiff had low IQ and perhaps borderline intellectual functioning, did not support a finding that he suffered from deficits in adaptive functioning. The ALJ based this conclusion upon such evidence as the opinions of Dr. Shapiro and Mr. Wallisch concerning Plaintiff's adaptive limitations. (R. 227, 268.)

Given that sufficient evidence supports the ALJ's finding that Plaintiff does not *now* suffer from deficits in adaptive functioning sufficient to satisfy Listing 12.05(C), he was not required to explore the question of when the deficits he found insufficient might have arisen. As the Sixth Circuit Court of Appeals has held, the latter inquiry becomes irrelevant: "We nevertheless affirm the ALJ's decision because West introduced absolutely no evidence that he experienced difficulties at all in 'adaptive functioning,' let alone that any such deficiencies arose during the developmental period." *West v. Comm'r of Soc. Sec.*, 240 Fed.Appx. 692, 698 (6th Cir. 2007). *See also Hayes v. Comm'r of Soc. Sec.*, 357 Fed.Appx. 672, 677 (6th Cir.

2009) (affirming, in part, because claimant could not demonstrate present adaptive-skills limitations). The Magistrate Judge was accordingly correct in finding that the decision of the ALJ as to Listing 12.05(C) was based upon substantial evidence.

IV. **Treating Physician Rule and Dr. D'Imperio.**

Dr. John D'Imperio is a psychiatrist who completed a Physician Certification of Medication Dependency form, a form request for medical information, and a form mental functional capacity assessment for Plaintiff between September 27 and October 25, 2005 for the Butler County Department of Job and Family Services. (R. 272-76.) There are no treatment records from Dr. D'Imperio, and he is not listed as a treating doctor in 2004 through 2006 reports submitted by English to the Commissioner. (R. 119-20, 184, and 187.) He gave a very pessimistic assessment of Plaintiff's capabilities, rating him "extremely" or "markedly" limited in numerous categories of vocational and social functioning, and diagnosed Plaintiff with auditory hallucinations and delusions, paranoia, and thought disorder with violent ideation. (R. 272-73.) Dr. D'Imperio also opined that Plaintiff was unemployable and likely to remain so for at least a year.

The ALJ gave no weight to Dr. D'Imperio's opinions and assessment. He stated that the record did not contain any evidence of an objective evaluation by D'Imperio of Plaintiff or even of any office visits. "The client was alleging hallucinations, delusions, homicidal and suicidal ideation, which the doctor apparently just accepted without objective evaluation". (R. 25.) In his Report and Recommendation, the Magistrate Judge found that the ALJ had not erred in

rejecting D'Imperio's findings, given that no treatment records were in evidence which could provide objective support for D'Imperio's assessment or demonstrate the length or frequency of the supposed treating relationship.

On objection, Plaintiff argues that, although the Magistrate Judge was correct in stating that he as the claimant bore the burden of providing medical evidence, the ALJ nevertheless had an independent duty to develop the record when he found it insufficient. "If the ALJ felt that Dr. D'Imperio's records were also necessary to provide underlying support for the opinions it was his duty to request the records since Mr. English already met his burden of proof." (Doc. 21 at 5.)

Plaintiff is incorrect. In the first place, his counsel made no objection at the hearing to Dr. D'Imperio's evidence as it was admitted into the record. (R. 485-86.) In the second place, the appellate court has repeatedly held that "only under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record." *Trandafir v. Comm'r of Soc. Sec.*, 58 Fed.Appx. 113, 115 (6th Cir. 2003). Although the Commissioner will make a reasonable attempt to compile a claimant's medical history, "[y]ou must provide medical evidence showing that you have an impairment... and any other information that we need to decide your case." 20 C.F.R. §404.1512(c). The ALJ did find that he lacked Dr. D'Imperio's records of Plaintiff's treatment and thus was prevented from giving weight to the treating source's opinion; he openly questioned whether such treatment ever took place at all. (R. 25.) Plaintiff failed to meet his

obligation to provide such records to illustrate to the ALJ the basis for D'Imperio's conclusions.

Plaintiff also argues that "[t]he Magistrate Judge does not dispute Mr. English's argument that Dr. D'Imperio's opinion was based upon appropriate psychiatric evidence and uncontradicted by other substantial evidence in the record. Despite this, Magistrate Judge Abel fails to offer any reason why Dr. D'Imperio's opinion is not controlling." (Doc. 21 at 5.) This is not a colorable argument. The Magistrate Judge held that the ALJ did not err in refusing to give substantial weight to D'Imperio's opinions as not based upon actual observations resulting from a treating relationship. (Doc. 20 at 25-26.) Plaintiff correctly notes that 20 C.F.R. §416.927(d)(2) requires the Commissioner to give controlling weight to any treating physician whose opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." *See also Tilley v. Comm'r of Soc. Sec.*, 394 Fed.Appx. 216 (6th Cir. 2010). It is for this reason – that Dr. D'Imperio's opinion, whether due to the absence of his treating records or the absence of a treating relationship, was not well-supported by medically acceptable clinical and laboratory diagnostic techniques, and was inconsistent with other substantial evidence – that the Magistrate Judge was correct in finding that the ALJ did not err in refusing to give controlling weight to Dr. D'Imperio's opinion.

V. **<u>Mr. Wallisch's Opinion</u>**.

Mr. Eckard Wallisch was a psychology assistant, who aided Dr. Roberto

Madrigal, a psychologist, in administering intelligence testing to Plaintiff. (R. 266-268.) At the time of this intelligence testing, Mr. Wallisch completed a form psychological impairment questionnaire, based upon his interview with Plaintiff. (R. 297-303.) It included diagnoses of bipolar disorder not otherwise specified (although with a note that this diagnosis was "by history") and borderline intellectual functioning. (R. 297.) Wallisch indicated various categories of moderate or mild limitation in vocational or social activities, and noted Plaintiff's extremely poor performance on a test of non-verbal fluid reasoning. (R. 301.) The ALJ gave no substantial weight to Mr. Wallisch's opinions, noting that Wallisch did not evaluate Plaintiff for purposes of diagnosis or treatment, and was not a psychologist. Upon appeal, Plaintiff objected that the ALJ erred in failing to give substantial weight to Wallisch as a treating source. The Magistrate Judge held:

> This argument is without merit. As the ALJ correctly noted, and the Plaintiff concedes, Wallisch explicitly discounted every aspect of his impairment questionnaire which was not based upon the IQ testing he administered, including a diagnosis of bipolar disorder ("by history"), listing of clinical findings ("client reported... but not independently verified"), evaluation of ability to tolerate work stress ("best answered by ongoing treatment professionals"), and his assessment as a whole ("most of the questions above were not addressed during my evaluation which addressed only the issue of his intellectual abilities"). Mr. Wallisch himself provided ample argument as to the amount of weight his opinion on matters other than the testing he administered should be given.

(Doc. 20 at 27.)

Upon objection, Plaintiff now argues that "there is no reason why Mr. Wallisch could not give an opinion on the limitations stemming from Mr. English's


low IQ", and that his opinion as a specialist in psychology who had examined Plaintiff was still entitled to some consideration. (Doc. 21 at 6.) However, the ALJ did evaluate Mr. Wallisch's opinions on the results of the intelligence testing he conducted, even giving it some weight as corroborating Dr. Shapiro's opinion. (R. 24-25.) It was his form assessment of Plaintiff's residual capacity, in which, the Magistrate Judge correctly noted, Wallisch himself expressed reservations as to the independent validity of his opinion, that the ALJ discounted as "not based upon any substantial evidence other than what the client told him." (R. 25.) He did not err in doing so.

VI. **Dr. Glaser and Dr. Ray**.

The ALJ evaluated the opinions of two different government medical examiners, Drs. Glaser and Ray. He largely discounted Dr. Ray's functional capacity conclusions as not based upon sufficient findings, and gave weight instead to the opinion of Dr. Glaser. Upon appeal, Plaintiff argued that Dr. Glaser's findings were "an aberration in the record", and that "her qualifications are unknown." (Doc. 13 at 24-25.) The Magistrate Judge found:

> The Court rejects the suggestion that Dr. Glaser was unqualified to examine Plaintiff and develop an opinion as to his physical condition and capabilities, because she was not board certified in a particular specialty. Plaintiff offers no basis, aside from a comment that Dr. Glaser's "qualifications are unknown", to support disparaging this examiner's ability to act as an acceptable medical source. This argument therefore has little merit on its face.

(Doc. 20 at 29.)

Plaintiff now argues that the Magistrate Judge was incorrect in finding "that there was 'no basis' to support Plaintiff's claim that the qualifications of the examining SSA physician, Dr. Glaser, were unknown." (Doc. 21 at 7.) He asserts that Dr. Glaser's license status is unknown, as she is not listed with either the American Medical Association in Ohio or the Ohio License Center. Plaintiff has mischaracterized the Magistrate Judge's opinion, which noted that Plaintiff had offered "no basis" for disparaging Dr. Glaser's ability to act as an acceptable medical source, not for asserting that Dr. Glaser's qualifications are unknown. Furthermore, the Court supposes, though it does not adjudicate, that the Loraine Glaser, M.D. who evaluated Plaintiff for the state disability determination agency is the Loraine Glaser, M.D. who evaluated claimants in, *e.g., Frederick v. Comm'r of Soc. Sec.*, 2011 WL 1114410 (S.D. Ohio Mar. 24, 2011), *Campbell v. Astrue*, 2010 WL 3001944 (E.D. Ky. July 29, 2010), *Courter v. Astrue*, 2010 WL 2651305 (E.D. Ky. June 30, 2010), *Berry v. Astrue*, 2010 WL 3730983 (S.D. Ohio June 18, 2010), *Redden v. Comm'r of Soc. Sec.*, 2010 WL 3522338 (S.D. Ohio Mar. 30, 2010), and *Hudson v. Comm'r of Soc. Sec.*, 2010 WL 883706 (S.D. Ohio Mar. 11, 2010). Furthermore, a search at the Ohio License Center website supplied by Plaintiff in his brief returns Dr. Loraine J. Glaser-Zakem, M.D., of Cincinnati, Ohio, a specialist in internal medicine and emergency medicine.

Social Security regulations provide at 20 C.F.R. §416.927(f)(2)(i) that:

> State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who

> are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are disabled.

The regulations further provide that an ALJ will consider such findings using relevant factors such as "the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions." 20 C.F.R. §416.927(f)(2)(ii).

In addition to his suggestion that Dr. Ray's qualifications as certified in physical medicine and rehabilitation are superior to the unknown qualifications of Dr. Glaser, Plaintiff argues that Dr. Ray's examination findings were generally consistent with the findings of his treating physician, Dr. Schulz, and were thus entitled to significant weight. However, both Drs. Glaser and Ray examined Plaintiff. The ALJ reviewed Dr. Ray's examination findings, which he determined were "mostly normal throughout." (R. 21.) He accepted Dr. Ray's postural limitations, and noted Ray's observations about Plaintiff's range of motion and abilities with upper and lower extremities. What the ALJ rejected, however, was Dr. Ray's resulting limited residual functional capacity, which he stated was not supported by any specific findings and appeared to be based mainly upon the claimant's allegations. (R. 21.) As the Magistrate Judge found, Dr. Glaser's examination findings were consistent with the limited record Dr. Schulz established

concerning Plaintiff's spinal and cervical impairments, and her observation that Plaintiff "made very poor effort" was consistent with the ALJ's own assessment of Plaintiff's credibility. Substantial evidence supported Dr. Glaser's functional capacity opinion, and Dr. Glaser, like Dr. Ray, was qualified to offer such an opinion. The ALJ therefore did not err in giving weight to Dr. Glaser rather than to Dr. Ray.

VII. **Plaintiff's Credibility**.

Plaintiff argues, finally, that the Magistrate Judge incorrectly "found that Mr. English was not credible because, as the ALJ noted, counsel for Plaintiff asked leading questions regarding" his symptoms and work problems.[3] (Doc. 21 at 8.) However, Plaintiff notes, leading questions are not prohibited in the context of a Social Security hearing, and nothing suggests that he offered this testimony only because of leading questions by counsel. Nevertheless, the ALJ offered several bases for his credibility determination, including being "led by counsel to allege psychotic symptoms", poor or indeterminate effort at examinations by Drs. Glaser and Schultz, inconsistencies in the history he gave Dr. Rosenthal at two different examinations, Dr. Rosenthal's failure to detect any sign of psychosis or hallucinations, and no record of hospitalization[4] or legal problems stemming from

[3] Plaintiff presumably means that the Magistrate Judge found that the ALJ's credibility determination was not unsupported or erroneous, not that the Magistrate Judge made a determination that Plaintiff was not credible.

[4] Plaintiff argues that "there is no requirement that a mentally ill patient be openly violent or require hospitalized to be found disabled." (Doc. 21 at 9.)

his alleged homicidal and suicidal ideation. The ALJ had a substantial basis upon which to base his credibility determination, and the Court does not find that he erred in such findings.

VIII. **Conclusions**.

For the foregoing reasons, the Report and Recommendation of the Magistrate Judge (Doc. 20) is **ADOPTED**.[5] Plaintiff's objections (Doc. 21) are **OVERRULED**, and the final decision of the Commissioner of Social Security is **SUSTAINED**. This matter is further **DISMISSED**.

8-15-2011
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

---

Nevertheless, the ALJ could take into account in his credibility determination the fact that, although Plaintiff testified that he had left his prior employment due to homicidal thoughts and had a dream about slaying his mother with an ax, and had reported to Dr. D'Imperio's intake therapist that he had been suffering violent ideations with commanding voices for five years, he had nevertheless never been hospitalized (or arrested) for impulses which "he is losing control to stop himself from acting" upon. (R. 290.)

[5] Plaintiff raised an objection that the ALJ relied upon flawed vocational examiner testimony in that he provided the vocational examiner with a residual functional profile based upon an incorrect consideration of the medical evidence. Plaintiff concedes that this argument is necessarily dependent upon the Court's findings upon the underlying errors, and it accordingly is rejected as well.